## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 11 C 50277 | DATE | 7/10/2012 |
| CASE TITLE | SFRL Inc. vs. Galena State Bank and Trust Co. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, plaintiff's complaint is dismissed in its entirety without prejudice. Plaintiff shall file an amended complaint consistent with this order on or before August 8, 2012.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

### STATEMENT - OPINION

     Plaintiff, SFRL Inc., brings this action against defendant, Galena State Bank & Trust Co. Jurisdiction is proper under 28 U.S.C. § 1332 (a) (1). Plaintiff is a South Dakota corporation with its principal place of business in South Dakota. Defendant is an Illinois banking corporation with its principal place of business in Illinois. The amount in controversy exceeds $75,000. Defendant moves to dismiss for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12 (b) (6).

     The complaint has nine counts: 1) conversion; 2) tortious interference with a business relationship or expectancy; 3) unjust enrichment; 4) civil conspiracy; 5) aiding and abetting tortious conduct; 6) negligence; 7) fraud and deceit; 8) negligent misrepresentation; and 9) equitable estoppel. Defendant moves to dismiss all of these claims.

     The facts are presented as alleged in the complaint. Mississippi Valley Livestock, Inc. ("MVL") purchased 157 "fat cattle" (cattle ready to be slaughtered) from plaintiff on March 21, 2007 and tendered a check, drawn on defendant, to plaintiff in the amount of $173,820.37. The next day, March 22, 2007, MVL purchased 131 fat cattle from plaintiff and tendered a check, drawn on defendant, to plaintiff in the amount of $153,808.44. On April 2, 2007, defendant notified plaintiff it was dishonoring these two checks because of insufficient funds. Between the dates of the cattle sale to MVL and the date defendant dishonored the checks, MVL sold all 288 fat cattle it had purchased from plaintiff and defendant received the cash proceeds of these sales.

     At the time MVL tendered plaintiff the NSF checks, defendant had terminated MVL's line of credit, MVL had already incurred over $13,000 in NSF charges to defendant, and defendant knew MVL was insolvent. Despite this insolvency, defendant permitted MVL to write approximately $2,000,000 in bad checks to several livestock barns, including plaintiff, to obtain cattle with the bad checks, to sell the cattle obtained to slaughterhouses and secondary buyers, and to transfer the cash proceeds of the sales to defendant to reduce MVL's debt to defendant. Plaintiff alleges defendant executed a plan intentionally and knowingly to have MVL write these bad checks to obtain cattle and then sell the cattle and transfer[1] the proceeds to

**STATEMENT - OPINION**

defendant before defendant was required to provide notice of dishonor to plaintiff and other livestock sales barns in order to reduce MVL's debt to defendant. Plaintiff alleges defendant is liable for its own conduct and also for the conduct of MVL which was acting as defendant's agent. Each count alleges defendant is "guilty of oppression, fraud, malice, and misconduct that is intentional, willful, outrageous, reckless, wanton, inspired by an evil motive or exhibiting an indifference to [plaintiff's] rights."

Defendant asserts in its opening brief that Illinois substantive law applies based on the default rule that a federal court applies the substantive law of the state where it sits. Plaintiff responds that at least one of its claims is specifically alleged under South Dakota law and that a conflict of laws issue has, therefore, been raised so that the default rule does not apply. However, plaintiff makes no argument as to why South Dakota law applies to any or all of the claims but simply states "[plaintiff] does not concede that Illinois law applies to any of the claims." Without an explanation as to why the court should apply South Dakota law, the court will apply Illinois law.

Defendant argues the heightened pleading requirements of Fed. R. Civ. P. 9 (b) apply to plaintiff's complaint. Plaintiff contends Rule 9 (b) does not apply except to one of its claims– the fraud and deceit claim of Count VII. However, plaintiff misapprehends the rule. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9 (b). This pleading requirement applies to <u>allegations</u> of fraud not <u>claims</u> of fraud "so whether the rule applies depends on the plaintiffs' factual allegations." Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'- in other words, one that is premised upon a course of fraudulent conduct" is subject to the heightened pleading requirements of the rule, whether or not the <u>claim</u> is for fraud. <u>See</u> id. This rule is designed to compel a plaintiff making allegations of fraud "to do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." Id.

The allegations against defendant here are clearly "premised upon a course of fraudulent conduct." Plaintiff says in effect that defendant defrauded it by getting MVL to take cattle from plaintiff knowing defendant would not honor the checks MVL tendered in payment. Defendant then is alleged to have seized the proceeds of MVL's resale of the cattle from MVL's account at defendant in order to reduce MVL's debt to defendant. "A complaint alleging fraud must provide the who, what, when, where, and how" to meet the pleading standard of Rule 9 (b). Id. Plaintiff's allegations fall short of this standard. Who at defendant spoke with whom at MVL and told that person or persons to issue NSF checks and to sell the purchased cattle and deposit the funds with defendant so defendant could seize them? When and where did these conversations occur? The answer to these questions must be alleged because the underlying factual scenario of this case (bank customer in financial trouble, bank concerned about repayment of customer's loan, large deposit enters customer's account, bank sets-off deposit to reduce customer's loan to bank) is a fairly common scenario and such set-offs are usually lawful. Plaintiff must allege more facts that show defendant was acting to fleece plaintiff rather than simply prudently acting to collect its outstanding loan to MVL. Because the requirements of rule 9 (b) are not met, plaintiff's complaint will be dismissed without prejudice.

There are also deficiencies in some of plaintiff's claims beyond the Rule 9 (b) issue which must be addressed in any amended complaint. Count I asserts conversion of plaintiff's property. Plaintiff contends it had an interest in the cattle sold and in the proceeds of the sale of the cattle which was greater than the interest of defendant and that defendant deprived plaintiff of its interest in the cattle and the money payable to plaintiff by virtue of the sale of the cattle by MVL. "In order to state a claim for conversion, a plaintiff must establish that it has a right to certain property, that it has a present and unconditional right to immediate possession of the property, that it made a demand for the return of that property, and that the defendant wrongfully and without authorization refused to return it." Safeco Ins. Co. v. Wheaton Bank & Trust Co., No. 07 C 2397, 2008 WL 216396 * 2 (N.D. Ill. Jan. 24, 2008). "Under Illinois law, when money is deposited with a bank, the bank takes title and becomes a debtor to the depositor, who then becomes the bank's

creditor." Id. Only the depositor has an immediate and unconditional right to possess the amount deposited. Id. A conversion action may be maintained by a depositor when bank account funds are specifically identifiable from a general debt owed to an account holder. Travelers Casualty & Surety Co. v. Paderta, No. 10 C 0406, 2010 WL 5419065 * 4 (N.D. Ill. Dec. 23, 2010). "Deposits are separable from the general debt owed to an account holder when the deposits are identifiable and issue from an outside source." Id. A subrogee of a depositor can assert the depositor's right to such identifiable funds. Id. at *5.

Plaintiff alleges identifiable funds from an outside source– the payments from MVL's sale of the cattle. However, plaintiff is not the depositor, MVL is, and plaintiff is not the subrogee of MVL. Plaintiff has not alleged a basis for it to have a present and unconditional right to the funds and, therefore, fails to state a claim for conversion.

Count II asserts defendant tortiously interfered with plaintiff's business relationship or expectancy with MVL. The elements of a claim for tortious interference with an existing contractual relationship are "(1) the existence of a valid enforceable contract between the plaintiff and another; (2) the defendant's awareness of the relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." Premier Transport, Ltd. v. Nextel Communications, Inc., No. 02 C 4536, 2002 WL 31507167, * 1 (N.D. Ill. Nov. 12, 2002). The elements for interference with a business expectancy are "(1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." Id.

Plaintiff argues that the "act that forms the basis of the tortious interference- the seizure of the proceeds- was directed at a third party, [MVL]." However, defendant's seizure of the proceeds from MVL's account is not an inducement of a breach. Defendant did not persuade MVL not to perform its end of the bargain with plaintiff. Defendant prevented MVL's performance from occurring by seizing the funds in MVL's account and applying them to MVL's debt to defendant. In the absence of inducement of MVL by defendant to not perform under MVL's agreement with plaintiff, a tortious interference claim cannot stand.

Count III is for unjust enrichment. To state a claim for unjust enrichment, "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." Radioactive Energy of Illinois, L.L.C. v. GZ Gourmet Foods & Beverage, Inc., No. 08 C 311, *4 (N.D. Ill. Feb. 24, 2009). (Internal quotation marks and citation omitted). Plaintiff alleges defendant retained the benefit of the proceeds received by MVL from the slaughter of the cattle to plaintiff's detriment because the seizure of the proceeds prevented payment to plaintiff by MVL of the purchase price of the cattle. But for plaintiff supplying MVL with the cattle, no proceeds would have been generated from their slaughter and defendant would not have been able to seize the funds to reduce MVL's outstanding obligation to defendant. In cases such as this, where plaintiff is seeking recovery for a benefit not conferred directly on defendant by plaintiff but where the benefit was transferred to defendant by a third party (MVL) retention of the benefit by defendant is unjust where "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason [has] a better claim to the benefit than the defendant." HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 679 (Ill. 1989).

Plaintiff does not argue that its complaint alleges any of the three bases set forth in HPI for finding unjust enrichment where the benefit was transferred to defendant by a third party. Assuming plaintiff's basis for this claim is "wrongful conduct," plaintiff will need to be mindful of Rule 9 (b) in it's amended complaint.

Count VI asserts a claim for negligence and Count VIII a claim for negligent misrepresentation. Plaintiff alleges, in Count VI, that defendant "had a duty to act reasonably to avoid or to prevent injury, harm,

damages, financial losses, and economic damages to [plaintiff] in [defendant's] dealings with and involving [plaintiff.] Plaintiff does not identify the source of the duty in it's complaint. In its brief, plaintiff does not differentiate between its negligence and its negligent misrepresentation counts but argues generally that defendant's liability is premised on "a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions" citing Catalan v. GMAC Mortgage Corp., 629 F.3d 676, 693 (7th Cir. 2011). However, nothing alleged in the complaint indicates defendant was in the business of supplying information for the guidance of plaintiff or any other non-customer of defendant. Count VI and Count VIII fail to state claims for negligence or negligent misrepresentation.

Count IX claims equitable estoppel. Defendant argues equitable estoppel is not a cause of action recognized in Illinois and plaintiff makes no response to this argument in its brief. Illinois appears to recognize equitable estoppel only as a defense. See Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 906 N.E.2d 520, 526 (Ill. 2009) (equitable estoppel is available only as a defense, while promissory estoppel can be used as the basis of a cause of action for damages.)

Defendant also challenges plaintiff's prayer for punitive damages in all counts. The request for punitive damages falls with the dismissal of the complaint as set forth above. A determination of the propriety of punitive damages must await the more specific re-pleading required by this order and will be re-visited prior to trial.

For the foregoing reasons, plaintiff's complaint is dismissed in its entirety without prejudice. Plaintiff shall file an amended complaint consistent with this order on or before August 8, 2012.

1. In its memorandum in opposition to defendant's motion to dismiss, plaintiff says defendant seized "the proceeds from the slaughter of the cattle [making] it impossible for [MVL] to pay."