# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50277 | **DATE** | 2/7/2013 |
| **CASE TITLE** | SFRL Inc. vs. Galena State Bank & Trust Co. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion to dismiss for failure to state a claim is granted. As plaintiff had an opportunity to amend its complaint to comply with Fed. R. Civ. P. 9(b) after the court's prior dismissal order, there is no need to grant further leave to amend. This case is dismissed in its entirety with prejudice.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, SFRL Inc., brings this action against defendant, Galena State Bank & Trust Co. Jurisdiction is proper under 28 U.S.C. § 1332 (a) (1). Plaintiff is a South Dakota corporation with its principal place of business in South Dakota. Defendant is an Illinois banking corporation with its principal place of business in Illinois. The amount in controversy exceeds $75,000. Defendant moves to dismiss for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12 (b) (6).

The amended complaint has ten counts: 1) conversion; 2) tortious interference with a business relationship or expectancy; 3) unjust enrichment; 4) civil conspiracy; 5) aiding and abetting tortious conduct; 6) negligence; 7) fraud and deceit; 8) negligent misrepresentation; 9) equitable estoppel and 10) punitive damages. Defendant moves to dismiss all of these claims.

The facts are taken from plaintiff's second amended complaint. Mississippi Valley Livestock, Inc. ("MVL") purchased 157 "fat cattle" (cattle ready to be slaughtered) from plaintiff on March 21, 2007 and tendered a check, drawn on defendant, to plaintiff in the amount of $173,820.37. The next day, March 22, 2007, MVL purchased 131 fat cattle from plaintiff and tendered a check, drawn on defendant, to plaintiff in the amount of $153,808.44. On April 2, 2007, defendant notified plaintiff it was dishonoring these two checks because of insufficient funds. Between the dates of the cattle sale to MVL and the date defendant dishonored the checks, MVL sold all 288 fat cattle it had purchased from plaintiff and defendant received the cash proceeds of these sales.

At the time MVL tendered plaintiff the NSF checks, defendant had terminated MVL's line of credit, MVL had already incurred over $13,000 in NSF charges to defendant, and defendant knew MVL was insolvent. Despite this insolvency, defendant permitted MVL to write approximately $2,000,000 in bad checks to several livestock barns, including plaintiff, to obtain cattle with the bad checks, to sell the cattle obtained to slaughterhouses and secondary buyers, and to transfer the cash proceeds of the sales to defendant to reduce MVL's debt to defendant. Plaintiff alleges defendant executed a plan intentionally and knowingly to have MVL write these bad checks to obtain cattle and then sell the cattle and transfer the proceeds to defendant before defendant was required to provide notice of dishonor to plaintiff and other livestock sales barns in order to reduce MVL's debt to defendant. Plaintiff alleges defendant is liable for its own conduct and also for the conduct of MVL which was acting as defendant's agent. Each count alleges defendant is "guilty of oppression, fraud, and malice, and intentional, willful, and wanton misconduct."

# STATEMENT - OPINION

Andrew Townsend was defendant's president and Pamela Doyle its portfolio manager for MVL's account. John Connery was MVL's president. In June 2006, Townsend and Doyle decided not to extend further credit to MVL unless MVL reduced the scope of its business. Townsend and Doyle exercised control over MVL's business affairs and financial decisions from June 2006 through April 2007. During this period MVL's financial condition failed to improve. Townsend and Doyle were aware MVL was tendering checks to obtain cattle during this period, a time when MVL's deposit account held insufficient funds to cover these checks. Despite this insufficient funds status, Townsend and Doyle regularly approved the checks for payment. During this time period, MVL would sell the cattle it purchased to secondary buyers and deposit the proceeds into its deposit account at defendant or would otherwise reduce the debt it owed defendant.

In March and April 2007, Townsend and Doyle knew that during the float period between MVL's tender of a check to sale barns, such as plaintiff, and the time defendant was required to pay or dishonor the check, that MVL would have sold the cattle it bought from the sale barns so that plaintiff, and the other sale barns, would be stuck with no payment and no way to exercise reclamation rights on the cattle, when defendant dishonored the checks and used the proceeds to pay down MVL's debt to defendant. This action by defendant was part of a plan by which it exercised its control over MVL to get MVL to continue to write checks to buy cattle, sell the cattle to secondary buyers and deposit the proceeds in its account with defendant, defendant would continue to honor these checks until such time as the proceeds on deposit with it were at an optimal level for it at which time it would dishonor the checks and keep the proceeds to reduce MVL's debt to defendant at the expense of plaintiff and other sale barns. Defendant was a lender in control of MVL and had a duty to deal fairly with it and its unsecured creditors.

Plaintiff contends South Dakota law applies to this action rather than Illinois law. This issue was decided in the court's previous order [31] in this case. Plaintiff provided no argument at that time as to why South Dakota law applied and the court found Illinois law to be applicable. In that order, the court granted plaintiff time to "file an amended complaint consistent with this order." Consistency with that order requires pleading claims under Illinois law, the law the court found applicable in that order.

Even if the court were to consider the question of which law applies, the result would still be Illinois. "Federal courts sitting in diversity must look to the conflict-of-laws rules of the forum state for the applicable substantive law." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). Illinois applies the "most significant relationship test" in deciding which state's law to apply. Foodcomm Int'l v. Barry, 463 F. Supp.2d 818, 829 (N.D. Ill. 2006) (Der-Yeghiayan, J.). The "court considers: (1) where the injury occurred; (2) where the injury causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." Id. Looking at these factors, (3) and (4) are not determinative. Each party is domiciled in the state whose law it wishes to apply and the parties had no relationship in any location. Factors (1) and (2) favor Illinois. The injury causing conduct is defendant's alleged improper seizure of the proceeds of sale of cattle. The seizure occurred by setoff of funds in an account in defendant owned by a third party. The injury and the action causing the injury clearly occurred in Illinois at defendant's facility where the setoff was executed.

Count I asserts conversion. Plaintiff alleges it had a "possessory and financial interest in the 288 fat cattle and proceeds generated from the sale of the 288 fat cattle." It alleges that at the time defendant accepted the proceeds from MVL's secondary sale, plaintiff "had a present and unconditional right to said proceeds under common law and pursuant to [plaintiff's] reclamation rights under § 2-702 of the Uniform Commercial Code given [MVL's] insolvency of which [defendant] was specifically aware."

"In order to state a claim for conversion, a plaintiff must establish that it has a right to certain property, that it has a present and unconditional right to immediate possession of the property, that it made a demand for the return of that property, and that the defendant wrongfully and without authorization refused to return it." Safeco Ins. Co. v. Wheaton Bank & Trust Co., No. 07 C 2397, 2008 WL 216396 * 2 (N.D. Ill. Jan. 24, 2008) (Pallmeyer, J.). There is simply no way plaintiff could have had a present and unconditional right to immediate possession of cattle it had sold. Additionally, plaintiff never made demand for return of the cattle upon defendant and defendant never had possession of the cattle. Plaintiff never attempted to exercise reclamation rights in the cattle under Section 2-702 of the Uniform Commercial Code (810 ILCS 5/2-702) and Illinois does not recognize a right to reclaim proceeds under Section 2-702. Union Packing Co. v. Chicago Food Processors, Inc., No. 83 C. 1890, 1984 WL 655, *3 (N.D. Ill. June 8, 1984) (Moran, J.)

Plaintiff's common law claim for conversion of the proceeds fails to overcome the defects noted in the court's

prior order. "Under Illinois law, when money is deposited with a bank, the bank takes title and becomes a debtor to the depositor, who then becomes the bank's creditor." Safeco, 2008 WL 216396 at * 2. Only the depositor has an immediate and unconditional right to possess the amount deposited. Id. A conversion action may be maintained by a depositor when bank account funds are specifically identifiable from a general debt owed to an account holder. Travelers Casualty & Surety Co. v. Paderta, No. 10 C 0406, 2010 WL 5419065 * 4 (N.D. Ill. Dec. 23, 2010) (Zagel, J.). "Deposits are separable from the general debt owed to an account holder when the deposits are identifiable and issue from an outside source." Id. A subrogee of a depositor can assert the depositor's right to such identifiable funds. Id. at *5. As set forth in the court's previous order, plaintiff is not the depositor, MVL is, and plaintiff is not the subrogee of MVL. Plaintiff has not alleged a basis for it to have a present and unconditional right to the funds and, therefore, fails to state a claim for conversion.

Count II asserts defendant tortiously interfered with plaintiff's business relationship or expectancy with MVL. The elements of a claim for tortious interference with an existing contractual relationship are "(1) the existence of a valid enforceable contract between the plaintiff and another; (2) the defendant's awareness of the relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." Premier Transport, Ltd. v. Nextel Communications, Inc., No. 02 C 4536, 2002 WL 31507167, * 1 (N.D. Ill. Nov. 12, 2002) (Schenkier, M.J.). The elements for interference with a business expectancy are "(1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." Id.

The complaint alleges defendant interfered by refusing to honor checks MVL tendered to plaintiff while defendant received the proceeds from the secondary sale of the cattle and by inducing MVL to breach its obligation to tender valid funds to plaintiff for the cattle. In its brief, plaintiff does not argue the expectancy claim, so it is waived. Undeveloped arguments and arguments that are not supported by pertinent authority are waived. Puffer v. Allstate Ins. Co., 675 F.3d 709, 718 (7th Cir. 2012). The interference with an existing contractual relationship claim fails because inducing MVL to buy the cattle, resell them, and deposit the proceeds in defendant did not damage plaintiff. The damage to plaintiff arises from what defendant did– setoff the funds in MVL's account– not from inducing MVL to take the actions it took.

Count III alleges unjust enrichment. An unjust enrichment claim requires plaintiff to allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. Radioactive Energy of Illinois, L.L.C. v. GZ Gourmet Foods & Beverage, Inc., No. 08 C 311, 2009 WL 458616, * 4 (N.D. Ill. Feb. 24, 2009) (Dow, J.). Where, as here, plaintiff is claiming not that it directly conferred a benefit on defendant, but that the benefit was transferred by a third party (MVL) to defendant, the retention of the benefit by defendant is unjust where "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason [has] a better claim to the benefit than the defendant." HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 679 (Ill. 1989). Plaintiff alleges defendant's wrongful conduct makes the retention of the benefit by defendant unjust and that plaintiff has a better claim to the benefit than defendant.

Plaintiff alleges defendant, through its officers, Townsend and Doyle, controlled MVL and caused MVL to enter the contracts to purchase cattle from plaintiff, to resell the cattle, and to deposit the proceeds of those secondary sales into MVL's account at defendant so defendant could then setoff those deposits against MVL's debt to defendant. Plaintiff argues defendant implemented a fraudulent scheme to keep MVL in business until the cash proceeds from its secondary sale of cattle obtained from plaintiff (and others) were sufficient to offset its debt to defendant or, at least, improve defendant's position. This is the wrongful conduct it contends supports the unjust enrichment claim.

"[R]epayment of a loan is not 'unjust' enrichment." B.E.L.T., Inc. v. Wachovia Corp., 403 F.3d 474, 477 (7th Cir. 2005). Defendant loaned money to MVL and is "presumptively entitled to keep the repayment." Id. Plaintiff characterizes defendant as a "lender in control" of MVL and asserts this imposed a duty on defendant to protect the interests of MVL's other creditors such as plaintiff. However, plaintiff does not cite any Illinois law that defines a "lender in control" or establishes any duty of a "lender in control" to other creditors. Generally, a bank is entitled to advance its own interests and has no obligation to put the interests of its debtor or its debtor's other creditors first. See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1358 (7th Cir. 1990). One way a bank may

"advance its own interests" is to exercise a setoff of funds that come on deposit with it against a debt owed the bank by the depositor. See Symanski v. First Nat'l Bank of Danville, 609 N.E. 2d 989, 993 (Ill App. 1993). Plaintiff has not established defendant had a duty to it to look out for plaintiff's interest in securing payment for the cattle plaintiff sold MVL. When a seller accepts non-certified funds in payment, it runs the risk there will be insufficient funds in the account and even that the insufficiency will result from the bank's exercise of setoff rights or from the garnishment of the account by another creditor.

Assuming, for the sake of argument, that defendant could be liable to plaintiff for the funds it setoff, based on wrongful conduct, plaintiff would have to meet the heightened pleading requirements of Fed. R. Civ. P. 9 (b) which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9 (b). This rule is designed to compel a plaintiff making allegations of fraud "to do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007). "A complaint alleging fraud must provide the who, what, when, where, and how" to meet the pleading standard of Rule 9 (b). Id.

Plaintiff pleads a general scheme by Townsend, Doyle, and Connery to conceal MVL's insolvency and to buy cattle from plaintiff with checks they knew would be dishonored. However, plaintiff does not plead that any of these individuals made any false representations to any representative of plaintiff. Plaintiff's theory is that by establishing a pattern of paying MVL's NSF checks when MVL was insolvent, defendant was misrepresenting to plaintiff that MVL was solvent and that tendering the checks that were ultimately dishonored constituted a misrepresentation of solvency as well in light of the prior pattern.

While a tendered check has been construed to be a written representation of solvency for purposes of eliminating the ten-day limitation period set by 810 ILCS 5/2-702 (2) for reclamation of goods sold, see Theo. Hamm Brewing Co. v. First Trust & Savings Bank of Kankakee, 242 N.E.2d 911 (Ill. App. 1968), plaintiff does not present any authority to support a claim that tendering an NSF check is a fraudulent representation in and of itself. Simply pleading the tendering of the check, without any additional alleged misrepresentation, is insufficient to meet the requirements of Rule 9(b).

Count IV is a civil conspiracy count. The elements of civil conspiracy are: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by an unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." Borsellino, 477 F.3d at 509. The agreement is a necessary element of the claim. Id. The complaint does not provide sufficient detail of the agreement to meet the requirements of Rule 9(b). The complaint alleges that Townsend, Doyle, and Connery "discussed, conspired, planned, and agreed" over a ten-month period that MVL would continue to write checks to buy cattle, sell the cattle, and deposit the proceeds in defendant and that defendant would continue to honor the checks until the time it was most advantageous for it to dishonor them and setoff the account. The complaint never says with any specificity when these conversations occurred or what the content of the conversations were. The allegations are simply generalized speculation.

Aiding and abetting is asserted in Count V. "Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir.2006). This claim fails for the same reason the tortious interference claim discussed above fails– the injury to plaintiff results from defendant's setoff of the funds not the purchase or resale of the cattle. Additionally, as with the civil conspiracy count, the Rule 9(b) specificity requirements are not met. The complaint does not say specifically how the defendant "knowingly and substantially assisted the violation." The general allegations that defendant paid NSF checks over time is not adequate. Which checks? When were they paid? How did paying plaintiff on these checks harm plaintiff?

Count VI asserting negligence and Count VIII asserting negligent misrepresentation are essentially unchanged from those counts in the prior complaint which were dismissed by the court's previous order. Plaintiff notes in the complaint that these counts are essentially unchanged and included to preserve its appeal rights as to these claims. These claims fail for lack of a duty on the part of defendant to plaintiff. Plaintiff argues defendant had a duty to it to disclose MVL's insolvency because it was reasonably foreseeable that failing to disclose MVL's insolvency and allowing MVL to float checks would result in a loss to plaintiff and defendant had superior knowledge to plaintiff. "Courts have consistently held that banks do not owe a general duty of care to non-customers." Setera v. Nat'l City

| STATEMENT - OPINION |
|---|

Bank, No. 07 C 2978, 2008 WL 4425446, * 4 (N.D. Ill. Sept. 26, 2008) (Pallmeyer, J.).

Count VII seeks to establish a claim for fraud and deceit. The elements of such a claim are: (1) a false statement of material fact; (2) the statement is known or believed to be false by the person making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damages resulting from the reliance. Dloogatch v. Brincat, 920 N.E.2d 1161, 1166 (Ill. App. 2009). "There can be no fraud without a representation made with intent to deceive." B.E.L.T., 403 F.3d at 477. Because the allegations are of fraud, Rule 9(b) must be satisfied. Plaintiff does not allege any statement by any officer of defendant. Plaintiff suggests that "silence accompanied by deceptive conduct or suppression of material facts" may be actionable as fraud, citing Lefebvre Intergraphics, Inc. v. Sanden Machine Limited, 946 F. Supp. 1358, 1367 (N.D. Ill. 1996) (Alesia, J.). However, nothing in the complaint states with specificity who engaged in what deceptive conduct or suppression of material fact. The allegations are simply that defendant paid checks payable to plaintiff drawn on MVL's account when the account lacked sufficient funds to cover the checks. There are no allegations that a specific person at defendant concealed the NSF status from someone at plaintiff when someone at plaintiff inquired. The complaint does not allege anyone at plaintiff ever sought information about MVL's account balances much less that they were misled by silence or concealment when they asked. And, in any event, defendant had no duty to speak up for plaintiff's benefit anyway. B.E.L.T., 403 F.3d at 477.

Count IX asserts equitable estoppel. However, as the court found in its prior order, equitable estoppel is only recognized as a defense not as a cause of action in Illinois. See Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 906 N.E.2d 520, 526 (Ill. 2009) (equitable estoppel is available only as a defense, while promissory estoppel can be used as the basis of a cause of action for damages.)

Count X seeks punitive damages. This count falls as plaintiff has failed to state any substantive claims on which a recovery could be made.

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim is granted. As plaintiff had an opportunity to amend its complaint to comply with Fed. R. Civ. P. 9(b) after the court's prior dismissal order, there is no need to grant further leave to amend. This case is dismissed in its entirety with prejudice.